Case: 4:23-cv-00049-JAR   Doc. #:  1   Filed: 01/18/23   Page: 1 of 33 PageID #: 13



# Your Missouri Courts

Case.net

Search for Cases by: [Select Search Method... ▼]

| Judicial Links | eFiling | Help | Contact Us | Print |

GrantedPublicAccess  Logoff DCALBERS4417

## 22SL-CC04896 - KEITH M KRUPKA ET AL V STIFEL, NICOLAUS & COMPANY, (E-CASE)

| Case Header | Parties & Attorneys | Docket Entries | Charges, Judgments & Sentences | Service Information | Filings Due | Scheduled Hearings & Trials | Civil Judgments | Garnishments/ Execution |

[Click here to eFile on Case](#)
Click here to Respond to Selected Documents

Sort Date Entries: ● Descending ○ Ascending

Display Options: [All Entries ▼]

---

**12/28/2022** ☐ **Corporation Served**
Document ID - 22-SMCC-9356; Served To - STIFEL, NICOLAUS & COMPANY, INC.; Server - ; Served Date - 19-DEC-22; Served Time - 00:00:00; Service Type - Sheriff Department; Reason Description - Served

---

**12/20/2022** ☐ **Notice of Service**
Return of Service of Process.
  **Filed By:** JOSEPH AUGUST KRONAWITTER
  **On Behalf Of:** KEITH M. KRUPKA, JOSEPH J. LEE

---

**11/18/2022** ☐ **Summons Issued-Circuit**
Document ID: 22-SMCC-9356, for STIFEL, NICOLAUS & COMPANY, INC..Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

---

**11/17/2022** ☐ **Filing Info Sheet eFiling**
  **Filed By:** JOSEPH AUGUST KRONAWITTER

☐ **Motion Special Process Server**
Request for Process Server.
  **Filed By:** JOSEPH AUGUST KRONAWITTER
  **On Behalf Of:** KEITH M. KRUPKA, JOSEPH J. LEE

☐ **Pet Filed in Circuit Ct**
Class Action Petition.
  **Filed By:** JOSEPH AUGUST KRONAWITTER

☐ **Judge Assigned**
DIV 13

---

Case.net Version 5.14.60          [Return to Top of Page](#)          Released 11/02/2022

**Exhibit**

**1**

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY MISSOURI

| | |
|---|---|
| **KEITH M. KRUPKA and** ) | |
| **JOSEPH J. LEE, individually and on** ) | |
| **behalf of those similarly situated,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No.:** |
| **v.** ) | |
| ) | |
| **STIFEL NICOLAUS & COMPANY** ) | |
| **INCORPORATED,** ) | |
| ) | |
| **Defendant.** ) | |

## CLASS ACTION PETITION

Plaintiffs Keith M. Krupka and Joseph J. Lee, individually and on behalf of those similarly situated, by and through the undersigned counsel, for their Class Action Petition against defendant Stifel, Nicolaus & Company ("Stifel"), state and allege as follows:

### Short Statement of the Case

1.     Stifel facilitated the financing in what turned out to be one of the largest public financing scandals in the United States. From 2016 through 2018, Stifel was involved in the sale of over $160,000,000 in bonds, the money from which was funneled to inexperienced "borrowers" with various conflicts of interest, to own, operate, manage or otherwise control the acquisition and rehabilitation of low income housing Projects (the "Projects," identified hereafter) in Chicago, Illinois.  When the dust settled, the Projects were all in default of their obligations and in various states of disrepair. While bondholders lost well over $125 million, Stifel pocketed enormous fees and commissions.

1

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

## I.      PARTIES

2.      Keith M. Krupka ("Krupka") is an individual resident of the State of California.

3.      Joseph J. Lee ("Lee") is an individual resident of the State of California.

4.      Defendant Stifel, Nicolaus & Company, Incorporated ("Stifel") is a Missouri for-profit corporation registered to transact business within the State of Missouri and available for service of process in Missouri.

5.      Although the acts of Stifel set forth herein were performed by employees and/or partners of Stifel, Stifel is vicariously liable for the conduct and/or liability of such employees and/or partners, based upon principles of *respondent superior* liability and agency principles, as prescribed by statutes and common law.

## II.      JURISDICTION AND VENUE

6.      Jurisdiction over Stifel is proper in this Court pursuant to R.S.Mo. § 506.500 because Stifel is qualified to, and does, transact business in the state of Missouri and/or has engaged in transactions, such as those described herein, in the state of Missouri. The causes of action asserted in this Petition arise, in part, from business transacted, securities sold, and contracts entered into by Stifel in Missouri and with respect to Missouri enterprises. Moreover, Stifel has engaged in systematic and continuous business activities within the state of Missouri and has an established business presence in Missouri such that the exercise of general jurisdiction over Stifel in this action is appropriate.

7.      Venue is proper in this Court pursuant to R.S.Mo. § 508.010 because Stifel has transacted business throughout Missouri, including in St. Louis County, Missouri, and Stifel is located in St. Louis County, Missouri where it has an office or agents for the transaction of its usual and customary business activities.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

### III.    FACTUAL ALLEGATIONS

8.      The Illinois Finance Authority ("IFA") is a self-financed, state authority principally engaged in issuing taxable and tax-exempt bonds, and is located in Chicago, Illinois.

9.      Beginning in or about 2016, the IFA embarked on a series of transactions whereby the IFA would issue bonds for the purpose of acquiring, rehabilitating, and equipping certain multi-family residential rental properties in the Chicago, Illinois area (the "Projects"). The promoter of all the Projects was the Better Housing Foundation ("BHF"). The various Projects were:

   a.      The Shoreline Project whereby bonds with a par value of $13,560,000 were issued on or about July 21, 2016;

   b.      The Icarus Project whereby bonds with a par value of $51,805,000 were issued on or about May 17, 2017;

   c.      The Windy City Project whereby bonds with a par value of $59,980,000 were issued on or about November 16, 2017;

   d.      The Ernst Project whereby bonds with a par value of $19,040,000 were issued on or about February 23, 2018; and

   e.      The Blue Station Project whereby bonds with a par value of $25,025,000 were issued on or about May 24, 2018.

10.     The Projects were identical with respect to their structure, primary participants, and purpose and constituted one unitary scheme.  In that regard, Stifel served as underwriter for each of the Projects and each Project followed the same procedure, to-wit, (i) Stifel would underwrite, issue, and sell the Bonds; (ii) Stifel would deliver the proceeds of the sale of the Bonds to the IFA; (iii) the IFA would then make a loan to a "strawman" borrower, a business entity whose sole member was the Better Housing Foundation ("BHF"). BHF would then operate and/or otherwise control the Projects. The BHF was an Ohio corporation supposedly organized pursuant to § 501(c)(3) of the Internal Revenue Code.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

11.     Payments due on the Bonds for all Projects were secured only by revenues generated by the Projects and money held in accounts created and funded from proceeds from the sale of the respective Bonds.

12.     Mark DeAngelis ("DeAngelis"), at relevant times, was a real estate developer in Chicago, Illinois. DeAngelis was a promoter, creator, and officer of BHF.

13.     DeAngelis was also served as de facto manager and consultant for several of the Projects and received substantial fees with respect thereto.

14.     The Bonds were sold to the public by means of Official Statements. Stifel participated in the preparation of the Official Statements, which was endorsed by Stifel, and was prominently marked with Stifel's name on the front cover and used by Stifel to market the Bonds.

15.     Based upon the representations made by Stifel and the materials provided Stifel, and upon the belief that Stifel had disclosed all material facts related to the Bonds and had not omitted material facts related to the Bonds or the Projects, and upon the belief that Stifel had conducted and completed a sufficient investigation in order to form a reasonable basis for belief in the accuracy and completeness of key representations in the Official Statements, and that Stifel had disclosed to the investing public all material information Stifel knew or should have known about the Bonds and Projects, (i) Plaintiff Krupka purchased Windy City Project Bonds with a par value of $750,000 between September and November 2018, and (ii) Plaintiff Lee purchased Shoreline Project Bonds with a par value of $635,000 between August and September 2018 and Blue Station Project Bonds with a par value of $35,000 in January 2019.

## A.     THE PROJECTS VIOLATED VARIOUS MUNICIPAL ORDINANCES

16.     Even before plaintiffs Krupka and Lee purchased their respective Bonds, BHF began receiving notices of ordinance violations regarding the management and conditions at several of the Projects. From October 2017 through March 2018, BHF received 27 such notices.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

Stifel knew or should have known of such notices but failed to do anything to alert the investing public thereto.

17.     These ordinance violations regarding the Projects demonstrate fiscal irresponsibility, inexperience, and lack of financial acumen by BHF.

18.     To sell the Bonds purchased by Plaintiffs and Class Members, Stifel used material misrepresentations and omissions related to several issues without forming a reasonable basis for belief in the accuracy and completeness of key representations in the Official Statements, including but not limited to the following three matters:

19.     The Official Statements used by Stifel to sell the Bonds represented that the Borrower would "deliver a certificate to the effect that no litigation and no proceedings are pending or, to its knowledge, threatened against the Borrower, the Sole Member or other with respect to the Projects (or any of them), or the acquisition and rehabilitation thereof, or the issuance of the [the] Bonds or which would adversely affect the transactions contemplated by this Official Statement."

20.     These written representations were material and were false and misleading when they were used by Stifel to sell the Bonds to Plaintiffs and Class Members who were unaware of the falsity and misleading nature of these representations when they purchased the Bonds from Stifel.

21.     Stifel knew, or should have known through reasonable care, that these representations were false and misleading, and knew or should have known it lacked a reasonable basis for belief in the accuracy and completeness of representations in the Official Statement.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

22.     Indeed, Stifel knew, or should have known through reasonable care, facts that directly contradicted the key representations in the Official Statements related to ongoing litigation due to code violations of the Borrower.  In that regard, Stifel knew:

a.     As to the rehabilitation project, located at 5700 South Calumet Ave., four (4) separate notices of ordinance violations and summons had been issued in the latter part of 2017 and early 2018;

b.     As to the rehabilitation project, located at 4236-4238 South Indiana Ave., a notice of a violation and summons had been issued in January of 2018;

c.     As to the rehabilitation project, located at 7600 South Stewart, a notice of a violation and summons had been issued in January of 2018;

d.     As to the rehabilitation project, located at 5606-5608 South Michigan Ave, a notice of a violation and summons had been issued in January of 2018;

e.     As to the rehabilitation project, located at 5630 South Winchester Ave., a notice of a violation and summons had been issued in January of 2018;

f.     As to the rehabilitation project, located at 6820-6822 South Cornell Ave., six (6) separate notices of ordinance violations and summons had been issued in January and February of 2018;

g.     As to the rehabilitation project, located at 2666-2670 East 87th Street, a notice of a violation and summons had been issued in February of 2018;

h.     As to the rehabilitation project, located at 5720 Michigan Ave., two (2) separate notices of ordinance violations and summons had been issued in January of 2018;

i.     As to the rehabilitation project, located at 6427 South Drexel Ave., two (2) separate notices of ordinance violations and summons had been issued in February of 2018;

j.     As to the rehabilitation project, located at 4326 South Michigan Ave., a notice of a violation and summons had been issued in February of 2018;

k.     As to the rehabilitation project, located at 8143 South Ellis Ave., five (5) separate notices of ordinance violations and summons had been issued in February of 2018;

l.     As to the rehabilitation project, located at 812-614 West 77th Street, a notice of a violation and summons had been issued in February of 2018;

m.     As to the rehabilitation project, located at 618-622 East 71st Street, a notice of a violation and summons had been issued in February of 2018.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

23.     The accumulation of ordinance violations goes directly to the heart of the viability of all Projects and BHF's ability to manage the property.

24.     This conduct demonstrates fiscal irresponsibility and a lack of financial acumen by the individuals involved in BHF.

25.     None of these facts were disclosed to investors by Stifel, yet upon information and belief, Stifel did know about the Projects prior ordinance violations and therefore, Stifel *knew* that BHF had operational issues when relaying that the success of the Project was dependent upon BHF.

26.     Thus, before the Bonds were sold to Plaintiffs and the Class Members, Stifel had direct knowledge of material facts that clearly and unequivocally contradicted the material representations in the Official Statement and rendered those material representations false and misleading.  Stifel also had the duty to update the previous public disclosures that it knew or should have known were false, misleading, or incomplete.

27.     But Stifel did not exercise its contractual right, pursuant to the Bond Purchase Agreement ("BPA") with the IFA and BHF, to halt the bond offerings in order to correct the misrepresentations and omissions in the Official Statement to ensure investors were made aware of these material facts.

28.     The misleading representations and omitted facts set forth above are material and would have been material to the decision of Plaintiffs and Class Members to purchase the Bonds, and resulted in material misstatements suggesting prior litigation as to the Projects were ongoing and the ability of the Manger to properly manage the property was in serious question.

29.     Plaintiffs and Class Members were unaware of these false and misleading representations and omitted facts when they purchased the Bonds from Stifel.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

**B.** **THE PROJECTS DEFAULT**

30.    By the end of 2019, after investigating these new and disturbing facts discovered by the Bond Trustee, the Bond Trustee had declared BHF to be in default on all the Projects due to its failure to comply with certain of its covenants set forth in the various Loan Agreements, between the IFA and BHF.

31.    The Bond Trustee's notice of April 17, 2019, was the first time any purchase of the Bonds was made aware of BHF's previously undisclosed ordinance violations and defaults.

32.    The Bond Trustee declared numerous failures by the BHF to comply with the covenants within the Loan Agreements, the Mortgages and the Regulatory Agreements with respect to all the Projects including:

a.    Failure to comply with Sections 2.2(i), 2.2(l), 2.2(o), 2.2(z) and 4.7 of the Loan Agreements relating to operation of the Projects in accordance with:

  i.    Applicable licenses and permits;

  ii.   Compliance with applicable zoning, planning, building and environmental law, ordinances and regulations;

  iii.  Proper rehabilitation, equipping and operation of the Projects in accordance with applicable laws, rulings, regulations and ordinances of governmental authorities and approvals therefrom;

  iv.   Prevention of damage to the Projects in order to avoid material adverse effects on the use or value of the Projects; and

  v.    At the Borrower's expense, maintenance of the Projects in a safe condition, in good repair and in good operating condition, including necessary and proper repairs thereto and renewals and replacements thereof including external and structural repairs, renewals and replacements.

b.    Failure to comply with covenants set forth in Sections 2(g), 2(h), 3(d) and 4(a) of the Tax Regulatory Agreements relating to:

  i.    Operation of each Project as a multi-family rental housing project in accordance with all applicable federal, state and local laws, rules and regulations;

  ii.   Maintenance of all necessary certificates, permits, approvals and authorizations with respect to the operation of each Project; and

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

iii. Maintenance of continuous availability of each Unit of each Project for rental on a continuous basis to members of the public, including required percentages of Lower Income Tenants and Moderate-Income Tenants.

c. Failure to comply with Section 3.2(b) of the Loan Agreements, which requires the deposit of all Project Revenues with the Trustee upon receipt by BHF or the property manager.

d. Section 2.2(aa) of the Loan Agreements coupled with Section 4(b) of the Tax Regulatory Agreement requires BHF to obtain and maintain income certificates, from each qualifying tenant and, upon request by the Trustee, submit copies of the same to the Trustee within one month of occupancy of a Unit (BHF failed to submit to the Trustee such tenant income certifications).

e. BHF failed to keep the Property and the Projects free from all adverse claims, security interests, and encumbrances as required by Sections 3.8, 3.10, 3.11, 4.10, and 4.11 of the Loan Agreement, Section 2.12(g) of the Mortgages and Section 2(f) of the Tax Regulatory Agreements.

f. BHF failed to provide notices relating to defaults as required under Section 6.10 of the Loan agreement.

33. In light of the violations and deficiencies by BHF, on April 17, 2019 the Bond Trustee requested that all violations and deficiencies be remedied no more than 120 days from the date of notice or pursuant to the applicable section of the Loan Agreement, Mortgages, or Tax Regulatory Agreement. In addition, failure to pay all debt service on the Senior Bonds when due on June 1, 2019 would also constitute an immediate event of Default under Section 8.01(a) of the Indenture.

34. On April 30, 2019, UMB N.A. was appointed as successor Trustee for the Bonds.

35. BHF failed to pay all of the debt service on the Senior Bonds when due.

36. On May 16, 2019, the City of Chicago Petitioned for the appointment of a Receiver.

37. On September 20, 2019, Disclosure Advisors LLC, were appointed as a dissemination agent.

38. Now the Bonds are worth far less than they should have been worth, had the facts and representations made to investors been accurate and complete.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

39.     On January 17, 2020, the Trustee issued a Notice of Defaults to the bondholders and the Bond Trustee declared numerous failures by the BHF to comply with the covenants within the Loan Agreements, the Mortgages and the Regulatory Agreements including:

a.      Failure by the Borrowers to make monthly Interest Payments into the Bond Fund Interest Accounts in a sum equal to the Interest Requirement on then Outstanding Bonds, subject to the applicable cure periods as required by section 3.2(b)(i)(1) of the Loan Agreements, resulting in an Event of Default under section 7.1(a) of the Loan Agreements. Consequently, the Borrower failed to pay the Trustee an installment of interest due on June 1, 2019 and December 1, 2019, while the Senior Bonds were outstanding, as required by section 2.02 of the Trust Indentures, resulting in a Default under section 8.01(a)(2) of the Trust Indenture.

b.      Failure by the Borrowers to make monthly Principal Payments into the Bond Fund Principal Accounts in a sum equal to the Principal Requirement on the Outstanding Bonds, subject to the applicable cure periods as required by section 3.2(b)(i)(2) of the Loan Agreements, resulting in an Event of Default under section 7.1(a) of the Loan Agreement. Consequently, the Borrower failed to pay the Trustee an installment of principal due on June 1, 2019 and December 1, 2019, while the Senior Bonds were outstanding, as required by section 5.05 of the Trust Indentures, resulting in a Default under section 8.01(a)(1) of the Trust Indentures.

c.      Failure by the Borrowers to replenish the Debt Service Reserve Fund in order to satisfy the applicable Debt Service Reserve Requirement pursuant to sections 3.2(b)(ii)(6) and 4.5 of the Loan Agreement resulting in a Default under sections 7.1(b) of the Loan Agreement, and 8.01(d) of the Trust Indenture.

d.      Failure by the Borrowers to pay Operating Expenses when due, as required by section 4.4 of the Loan Agreement, resulting in a Default under sections 7.1(b) of the Loan Agreement, and 8.01(d) of the Trust Indenture.

e.      Failure by the Borrowers to make any Additional Loan Payments required to pay all real property taxes and assessments which are assessed or imposed on the Project, or become due and payable, as required by sections 2.2 of the Mortgage, and 4.10 of the Loan Agreement, resulting in a Default under sections 7.1(b) of the Loan Agreement, 4.1(c) of the Mortgage, and 8.01(d) of the Trust Indenture.

f.      Failure by the Borrowers to procure and maintain full insurance coverage on the Projects, as required by section 5.1 of the Loan Agreement, resulting in a Default under sections 7.1(b) of the Loan Agreement, 4.1(c) of the Mortgage, and 8.01(d) of the Trust Indenture.

g.      Failure by the Borrowers to provide annual financial information for Fiscal Year, 018, as required by the Continuing Disclosure Agreement under section 6.14 of the

10

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

Loan Agreements, resulting in a Default under sections 7.1(d) of the Loan Agreement, 4.1(c) of the Mortgage, and 8.01(d) of the Trust Indenture.

h.    Failure by the Borrowers to provide annual financial information for Fiscal Year, 2018, as required by the Continuing Disclosure Agreements under section 6.14 of the Loan Agreements, resulting in a Default under sections 7.1(d) of the Loan Agreements, 4.1(c) of the Mortgage, and 8.01(d) of the Trust Indentures.

i.    Failure by the Borrowers to comply with applicable zoning, planning, building and environmental laws, ordinances and regulations as required by sections 2.2(i), 2.2(1), 2.2(0), 2.2(z), and 4.7 of the Loan Agreement causing the city of Chicago to issue zoning, life safety violations, and appoint Receivers to manage all constituent properties by order of the Circuit Court of Cook County, Illinois Municipal Department First District, resulting in a Default under sections, 7.1(d) of the Loan Agreement, 4.1(c) of the Mortgage, and 8.01(d) of the Trust Indenture.

40.    Because of the impaired nature of the Bonds: (1) the market value of the Bonds sold by the Former Bondholders was far less than the face value of the Bonds; (2) the market value of the Bonds held by the Plaintiffs and Current Bondholders are far less than the face value of the Bonds, and (3) Plaintiffs, the Former Bondholders and the Current Bondholders have been injured as a result of such losses.

41.    The Bonds went into default because of fiscal irresponsibility and lack of financial acumen by BHF, which Stifel knew about, or reasonably should have known about after reasonable investigation and before selling the Bonds to Plaintiffs and the Series A Bondholders.

C.    **STIFEL'S DUTIES**

42.    Stifel was first approached to serve as the Bond underwriter in 2016.

43.    Stifel provided important advice to IFA and BHF and was ultimately responsible for the structure of the Bond offerings and participated in preparation of the various versions of the Official Statements referred to above.

44.    Stifel (and underwriters in general) have a duty under prevailing industry practices and legal requirements to review the disclosures of a bond issuer, or an obligated person, in a

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

professional manner with respect to accuracy and completeness of statements made in connection with a bond offering.

45.     Stifel was obligated under prevailing industry practices and legal requirements to conduct and complete a sufficient investigation in order to form a reasonable basis for belief in the accuracy and completeness of key representations in the Official Statements.

46.     Stifel (and underwriters in general) serve as intermediaries between bond issuers/borrowers and the investors that purchase bonds.

47.     When it agrees to serve as the underwriter for a bond issue, Stifel makes an implied recommendation about the securities it is underwriting, and also makes a representation that it has a reasonable basis for belief in the accuracy and completeness of the key representations made in any disclosure documents in the bond offering. The underwriter's investigation and the "reasonable basis" requirement is often referred to as "due diligence."

48.     Stifel is aware of the due diligence requirement for underwriters—it provided the following specific endorsement for inclusion in the Official Statement which investors relied on:

> The Underwriter has provided the following sentence for inclusion in this Limited Offering Memorandum. The Underwriter has reviewed the information in this Official Statement in accordance with, and as part of, **its responsibilities to investors** under the federal securities laws as applied to the facts and circumstances of this transaction, but the Underwriter does not guarantee the accuracy or completeness of such information. [emphasis added]

49.     Stifel is aware that, as the underwriter, it is required to review an official statement of the issuer's securities, and complete requisite due diligence, in accordance with, and as part of, its responsibilities to investors under prevailing industry practices and legal requirements and under federal and state securities laws, as applied to the facts and circumstances of the transaction.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

50.     Because of the detailed due diligence that bond underwriters are supposed to perform, underwriters must exercise affirmatively a high degree of care in investigation and independent verification of the disclosures of issuers and obligated persons.

51.     Overall, more reliance for due diligence in the issuance of securities is placed on the underwriter than upon any other participant in the municipal securities market's self-regulatory system. Underwriters function as the first line of defense for investors with respect to material misrepresentations and omissions by issuers and borrowers in their offering documents, such as the Official Statement.

52.     Stifel is aware of its crucial position in a bond offering; Stifel knows that due diligence is an affirmative industry and legal duty to be able to form reasonable basis for belief in the accuracy and completeness of key representations made concerning the underlying securities, which necessarily requires it to adhere to prevailing standards for underwriter investigation that are part of every issuance of municipal securities, such as the Bonds.

53.     Had Stifel performed due diligence in accordance with prevailing industry practices and legal requirements on the undisclosed BHF loan information, of which Stifel had specific knowledge, or reasonably should have known prior to the Bond sale, Stifel would have discovered even more troubling facts surrounding BHF.

**D.      BHF'S CONFLICTS OF INTEREST**

54.     On or about July 29, 2016, BHF acquired certain Properties through the financing of the IFA in conjunction with Stifel as the underwriter.

55.     DeAngelis was the sole signatory on the financial account for BHF related to the Projects. The accounts were held at Fifth Third Bank.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

56.     As sole signatory, only DeAngelis controlled the funds and accounts for the Properties. Even the President and other corporate officers of BHF did not have access to the Properties' funds and accounts at Fifth Third Bank.

57.     DeAngelis had sole control and management of the BHF funds held at Fifth Third.

58.     DeAngelis held himself out to third parties as a corporate officer of BHF.

59.     In total, Mark DeAngelis appears to be a principal of both Desak and Integrus, was the manager of Lindran, BHF and BHF, acted as a corporate officer of BHF, and was the primary person responsible for the management and handling of funds related to the Properties.

60.     The conflicts of interest fail to address Mark DeAngelis' relationship with all of the entities and these written material representations in the Official Statement made available by Stifel to Plaintiffs and others were materially false and misleading when they were used by Stifel to sell the Bonds to Plaintiffs and Class Members, and Plaintiffs and Class Members were unaware of the falsity and misleading nature of these key representations when they purchased the Bonds from Stifel.

61.     Stifel knew, or should have known through reasonable care in accordance with prevailing industry practices and legal requirements, that these representations were false and misleading, and also knew, or should have known, that it lacked a reasonable basis for belief in the accuracy and completeness of these representations in the Official Statements.

62.     In sum, Stifel signed off on bond structures whereby the same few individuals who were behind BHF stood to net **millions** from false and materially misleading "consulting fees," none of which was fully disclosed in a materially accurate and complete manner to Plaintiffs and the Class Members.

63.     These omitted and misstated facts were material and would have been material to the decision of Plaintiffs and Class Members to purchase the Bonds.

64.     Plaintiffs and Class Members were unaware of these omitted and misstated facts when they purchased the Bonds from Stifel.

65.     All of these conflicts of interest and interconnections involving BHF were material facts and in accordance with prevailing industry practices and legal requirements, should have been disclosed to Plaintiffs and Class Members.

66.     Stifel had an unwaivable duty and obligation, pursuant to prevailing industry practices and legal requirements, to perform due diligence on any "borrower" related to this bond offering and regarding the use of bond proceeds. Thorough and appropriate due diligence by Stifel would have and should have discovered the material facts set forth above.

**E.      BHF'S LACK OF CHARITABLE REGISTRATION**

67.     Had Stifel performed due diligence in accordance with prevailing industry practices and legal requirements on the undisclosed BHF loan information, of which Stifel had specific knowledge, or reasonably should have known prior to the Bond sale, Stifel would have discovered even more troubling facts surrounding BHF.

68.     The Official Statement falsely and in a misleading manner represented the Sole Members history of its charitable registration as follows:

a.      "The sole member of the Borrower is the Better Housing Foundation, an Ohio nonprofit corporation and an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986."

b.      "The Sole Member is organized and operated exclusively for charitable purposes, and was not and is not organized nor controlled, directly or indirectly, by private interests."

c.      "The Sole Member has received a determination letter from the IRS dated April 23, 2015, for its tax-exempt status effective April 23, 2015."

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

d.  "[T]hat the Sole Member is an organization described in Section 501(c)(3) of the Code and can reasonably be expected to be a publicly supported organization described in Section 509(a)(2)."

e.  "The Borrower agrees that during the term of the Loan Agreement it will maintain its existence, will continue to be a nonprofit corporation in **good standing** . . . ." (emphasis added).

69.  Stifel knew, or should have known through reasonable care, facts that directly contradicted the key representations in the Official Statement related to BHF's ongoing incomplete charitable registration document, as follows:

a.  In the State of Ohio, BHF's place of incorporation, BHF did not complete its full registration process and submission of a report until August 23, 2017.

b.  This Report was filed on behalf of BHF to include the fiscal years of 2015 and 2016.

c.  Prior to August 23, 2017, BHF was soliciting purchases of the BHF Bonds, despite the State of Ohio requires the completion of registration prior to solicitation.

d.  After the registration and reports were filed on behalf of BHF on August 23, 2017, BHF was obligated to file annual reports on the 15th day of the fifth month following the close of the fiscal year.

e.  No extension was requested from the IRS that would extend the time to file the report.

f.  For the reporting year of 2017, BHF filed their annual report on November 7, 2018.

70.  The misleading representations and omitted facts set forth above are material and would have been material to the decision of Plaintiffs and Class Members to purchase the Bonds, and resulted in material misstatements suggesting BHF was a credible nonprofit, that had successfully completed the initial and ongoing registration requirements that are in place to safeguard potential donors.

71.  Stifel had an unwaivable duty and obligation, pursuant to prevailing industry practices and legal requirements, to perform due diligence on any "borrower" related to this bond

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

offering and regarding the use of bond proceeds. Thorough and appropriate due diligence by Stifel would have and should have discovered the material facts set forth above.

## IV.   CLASS ALLEGATIONS

72.   Because common questions of fact and law predominate regarding the offering and sale of the Bonds with respect to all other Projects, plaintiffs bring this action pursuant to Missouri Rule of Civil Procedure 52.08 on their own behalf and on behalf of a class of individuals (the "Class") defined as: "All persons or entities who or which purchased Better Housing Foundation Bonds issued by the Illinois Finance Authority with respect to the Shoreline, Icarus, Windy City, Ernst, and Blue Station Projects." Excluded from the Class are officers, directors or employees of Stifel, any trial judge who may preside over this action, court personnel and their family members and any juror assigned to this action. Alternatively, Krupka seeks to represent all those who purchased Windy City Bonds and Lee seeks to represent all those who purchased Shoreline Bonds and Blue Station Bonds.

73.   Plaintiffs are members of the Class which it seeks to represent.

74.   The Class consists of numerous individuals and companies scattered around the country and therefore, the Class is so numerous that joinder is impracticable.

75.   Plaintiffs' claims are typical of the claims of the Class because Plaintiffs and all members of the Class have sustained damages as a result of Stifel conduct.

76.   There are numerous questions of law and fact common to Plaintiffs and the Class which predominate over any questions affecting only individual Class Members, including but not limited to the following:

a.   Whether Stifel negligently underwrote the Bonds for the Projects;

b.   Whether Stifel negligently misrepresented or concealed material facts in its sale of the Bonds; and

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

c.      Whether Stifel adequately disclosed negative material facts regarding the management and operation of the Projects.

77.     All common questions can be resolved through the same factual occurrences as specifically and/or generally alleged herein.

78.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class.

79.     Plaintiffs have no claims antagonistic to those of the Class.

80.     Plaintiffs have retained competent and experienced counsel in complex cases, securities cases and class action litigation, and such counsel is committed to the vigorous prosecution of this action.

81.     The prosecution of separate actions by the Plaintiffs and individual members of the Class against Stifel would create a risk of inconsistent or varying adjudications on the common issues of law and fact related to this action.

82.     A class action is appropriate and superior method for the fair and efficient adjudication of this controversy.

83.     The expense and burden of litigation would substantially impair the ability of the Class to pursue individual cases to protect their rights.

84.     In the absence of a class action, Stifel will retain the benefits of its wrongdoing and will continue to retain its ill-gotten gains from the sale of the Bonds and may in the future feel emboldened to repeat its egregious conduct with regards to its sales representations for other bonds offerings.

**COUNT 1-NEGLIGENCE**

85.     Plaintiffs restate and re-allege the paragraphs set forth above of their Petition and incorporate the same by reference as though fully set forth herein.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

86.     Stifel, as the underwriter for the Project, was ultimately responsible for and had a duty to conduct due diligence concerning the Bonds before selling the Bonds.

87.     Stifel did not form a reasonable basis for belief in the accuracy and completeness of material representations in the Official Statement or statements made by and BHF regarding the Project.

88.     As a result, Stifel failed to uncover, or simply ignored, numerous material misrepresentations in the Official Statement and bond documents, and omitted material facts from the Official Statement. Stifel also had a duty to correct any prior statements that it knew or should have known were false, misleading, and/or incomplete. Stifel had a duty to disclose facts regarding the Projects that would be material to the investing public so long as the Official Statement was used to sale the Bonds.

89.     The materials facts misrepresented and omitted by Stifel negatively impacted the value of the Bonds.

90.     Stifel's negligence caused Plaintiffs and the Class Members to suffer damages including the loss of their investment and investment income.

## COUNT 2-NEGLIGENT MISREPRESENTATION/CONCEALMENT

91.     Plaintiffs restate and re-allege the paragraphs set forth above of their Petition and incorporate the same by reference as though fully set forth herein.

92.     Stifel sold the Bonds using material misrepresentations, and by omitting material facts that were necessary in order to make the representations made, in light of the circumstances under which they were made, not misleading.

93.     Stifel was the underwriter of the bonds.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

94.     A reasonably careful underwriter in the position of Stifel, or acting in accordance with prevailing industry practices and legal requirements, would have anticipated that if it failed to do due diligence and presented the bonds as more secure than they were to investors, the investors who relied on those representations to purchase the bonds would lose money if the bonds failed.

95.     Underwriters are unquestionably aware of the nature of the public's reliance on their participation in the sale of a security. The investing public properly relies upon the underwriter to check, in accordance with prevailing industry practices and legal requirements, the accuracy and completeness of the statements made in offering documents and sales presentations and the soundness of the offering. When the underwriter does not speak out, the investor reasonably assumes that there are no undisclosed material deficiencies and no materially misleading representations.

96.     Stifel thus owed a duty to the class of persons who could foreseeably be injured by its carelessness, namely investors, to take reasonable care to perform due diligence in accordance with prevailing industry practices and legal requirements, so that the risk of such injury would not occur.

97.     Stifel owed Plaintiffs and Class Members a duty, in accordance with prevailing industry practices and legal requirements, including the obligation to exercise due and reasonable care and to investigate and question the various facts, circumstances, and representations made by and with respect to BHF before offering the bonds that Plaintiffs and Class Members purchased.

98.     Stifel undertook and owed an affirmative duty, in accordance with prevailing industry practices and legal requirements, to Plaintiffs and Class Members to exercise due and reasonable care: (1) in performing their part of the due diligence responsibilities in the bond

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

offering, and (2) in supplying information in the Official Statement that it helped to prepare and used to directly solicit and sell the bonds to Plaintiffs and Class Members, in order to form a reasonable basis for belief in the accuracy and completeness of key material representations in the Official Statement, (3) to disclose information Stifel knew and (4) to update previous statements that it later learned were false, misleading, or incomplete. Stifel also had a duty to disclose facts regarding the Projects that would be material to the investing public so long as the Official Statement was used to sell the Bonds.

99.     Stifel violated that duty in failing to exercise due and reasonable care in accordance with prevailing market practices and legal requirements, in investigating and questioning the various facts, circumstances, and representations made with respect to BHF, the Projects and the bond offerings in general, and in supplying information that was materially inaccurate and misleading as to important and material facts, in omitting the material facts set forth above and failing to update prior statements, and disclose facts, that it knew were false, misleading, or incomplete.

100.    As a result of Stifel's breach of its duties, the statements made by it were false and misleading and omitted the material information described above.

101.    The information provided to Plaintiffs and Class Members, as set forth above, was intentionally provided by Stifel in the course of its businesses, and for its own pecuniary interests. Further, the true nature of the facts regarding these statements and/or omissions was material to potential bond purchasers, including Plaintiffs and Class Members.

102.    Stifel knew, or should have known through the exercise of reasonable care in accordance with prevailing industry practices and legal requirements, of the material misrepresentations and omissions noted above.

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

103.    Plaintiffs' justifiably relied upon the information imparted by Stifel in making investment decisions and in ultimately purchasing the Bonds at issue.

104.    Stifel's conduct and actions/omissions caused or contributed to cause the pecuniary damages/loss that Plaintiffs and Class Members sustained, in an amount to be determined at trial.

WHEREFORE, for the foregoing reasons, Plaintiffs pray the Court for judgment against defendant Stifel, Nicolaus & Company, Incorporated in an amount to be determined at trial, as appropriate for:

a.    Compensatory, restitution and general damages for Plaintiffs and the Class in an amount that is fair and reasonable and just;

b.    reasonable and/or statutory attorneys' fees under the state securities laws;

c.    costs of suit;

d.    prejudgment and post judgment interest thereon at 8% or other appropriate rate, as provided for by statute; and

e.    such other and further relief as the Court deems just, appropriate and equitable.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury on all issues so triable.


Dated: November 17, 2022                Respectfully submitted,

 */s/ Joseph A. Kronawitter*
Robert A. Horn MO Bar No. 28176
Joseph A. Kronawitter MO Bar No. 49280
HORN AYLWARD & BANDY, LC
2600 Grand Boulevard, Suite 1100
Kansas City, MO 64108
Telephone: (816) 421-0700
Facsimile: (816) 421-0899
rhorn@hab-law.com
jkronawitter@hab-law.com

-and-

22

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

 /s/ J. Timothy Francis
J. Timothy Francis AL Bar No. 4887-F68J
*(pro hac forthcoming)*
FRANCIS LAW, LLC
300 N. Richard Arrington Jr. Blvd.
700 Title Building
Birmingham, Alabama 35203
Telephone: (205) 251-0252
francis@bham.rr.com

**Attorneys for Plaintiffs**

**22SL-CC04896**

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

**In the**

# CIRCUIT COURT
**Of St. Louis County, Missouri**

For File Stamp Only

 Krupka, et al.
Plaintiff/Petitioner

November 17, 2022
Date

vs.

 Stifel Nicolaus & Company, Inc.
Defendant/Respondent

Case Number

Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now   Plaintiffs                                          , pursuant
                  Requesting Party
to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
 Martin Huekel          HPS Process Servers, 1669 Jefferson, KCMO 64108    (816) 842-9800
Name of Process Server            Address                                      Telephone

Name of Process Server            Address or in the Alternative                 Telephone

Name of Process Server            Address or in the Alternative                 Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                          SERVE:
 Stifel Nicolaus & Company, Inc.
Name                                            Name
 CT Corporation System, 120 S. Central Ave.
Address                                         Address
 Clayton, MO 63105
City/State/Zip                                  City/State/Zip

SERVE:                                          SERVE:

Name                                            Name

Address                                         Address

City/State/Zip                                  City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk              /s/ Joseph A. Kronawitter
                                                Signature of Attorney/Plaintiff/Petitioner
                                                 49280
                                                Bar No.
By _____             2600 Grand Blvd., Ste. 1100, KCMO 64108
     Deputy Clerk                               Address
                                                 (816) 421-0700          (816) 421-0899
                                                Phone No.                          Fax No.
Date

CCADM62-WS   Rev. 07/22

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)    Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)    The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)    Appointments may list more than one server as alternates.

(B)    The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)    Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)    No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)    Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F)    This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

CCADM62-WS      Rev. 07/22

**22SL-CC04896**

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

**In the**

# CIRCUIT COURT
## Of St. Louis County, Missouri

┌                              ┐

For File Stamp Only

  November 17, 2022
Date

 Krupka, et al.
Plaintiff/Petitioner

_____
Case Number

vs.

_____
Division

 Stifel Nicolaus & Company, Inc.
Defendant/Respondent

└                              ┘

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now   Plaintiffs                                                        , pursuant
                          Requesting Party

to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of
 Martin Huekel            HPS Process Servers, 1669 Jefferson, KCMO 64108    (816) 842-9800
Name of Process Server            Address                                      Telephone

_____  _____  _____
Name of Process Server            Address or in the Alternative                Telephone

_____  _____  _____
Name of Process Server            Address or in the Alternative                Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below
named parties.  This appointment as special process server does not include the authorization
to carry a concealed weapon in the performance thereof.

SERVE:                                    SERVE:
 Stifel Nicolaus & Company, Inc.          _____
Name                                      Name
 CT Corporation System, 120 S. Central Ave.  _____
Address                                   Address
 Clayton, MO 63105                        _____
City/State/Zip                            City/State/Zip

SERVE:                                    SERVE:
_____               _____
Name                                      Name
_____               _____
Address                                   Address
_____               _____
City/State/Zip                            City/State/Zip

Appointed as requested:

**JOAN M. GILMER,** Circuit Clerk               /s/ Joseph A. Kronawitter
                                          Signature of Attorney/Plaintiff/Petitioner
                                           49280
By _____ **/s/Adam Dockery**            Bar No.
    Deputy Clerk                           2600 Grand Blvd., Ste. 1100, KCMO 64108
              11/18/2022                   Address
_____               (816) 421-0700         (816) 421-0899
Date                                      Phone No.                Fax No.

CCADM62-WS   Rev. 07/22

Electronically Filed - St Louis County - November 17, 2022 - 11:53 AM

Local Rule 28.  SPECIAL PROCESS SERVERS

(1)     Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2)     The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A)     Appointments may list more than one server as alternates.

(B)     The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C)     Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D)     No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E)     Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F)     This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system.  Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRUCE F. HILTON | **Case Number:  22SL-CC04896** |
| Plaintiff/Petitioner:<br>KEITH M. KRUPKA | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH AUGUST KRONAWITTER<br>SUITE 1100<br>2600 GRAND BLVD<br>KANSAS CITY, MO  64108-4626 |
| **vs.** | |
| Defendant/Respondent:<br> STIFEL, NICOLAUS & COMPANY, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO  63105 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to: | **STIFEL, NICOLAUS & COMPANY, INC.**<br>Alias: |

CT CORPORATION SYSTEM
120 S. CENTRAL AVE.
CLAYTON, MO 63105

*COURT SEAL OF*



*ST. LOUIS COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

__18-NOV-2022__
**Date**                                                                                    _____
                                                                                                              Clerk

**Further Information:**
AD

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by:  (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with

_____a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

_____ (name) _____(title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
      Printed Name of Sheriff or Server                               Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
*(Seal)*                                          Date                                                   Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $____10.00____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | **$_____** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST.  LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case.  However, most lawsuits are settled by the parties before a trial takes place.  This is often true even when the parties initially believe that settlement is not possible.   A settlement reduces the expense and inconvenience of litigation.  It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost.  Often such services are most effective in reducing costs if used early in the course of a lawsuit.  Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so.  In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below.   These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended.   Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not.  **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits.   Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party.  The services are provided by individuals and organizations who may charge a fee for this help.  Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case.  The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit.  An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties.  The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement.   An effective mediator may offer solutions that have not been considered by the parties or their lawyers.  A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator.  The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions.  While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations.  The neutral third party may issue an advisory opinion regarding the merits of the case.  The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations.  A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed.  After the "trial", the jurors retire to deliberate and then deliver an advisory verdict.  The verdict then becomes the starting point for settlement negotiations among the parties.

## Selecting an Alternative Dispute Resolution Procedure and a Neutral

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral.  As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals.  The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list.  The Circuit Clerk also has Neutral Qualifications Forms on file.  These forms have been submitted by the neutrals on the list and provide information on their background and expertise.  They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105.   The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral.  The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73



**IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI**

Electronically Filed - St Louis County - December 20, 2022 - 11:34 AM

| Judge or Division:<br>BRUCE F. HILTON | Case Number: **22SL-CC04896** |
|---|---|
| Plaintiff/Petitioner:<br>KEITH M. KRUPKA | Plaintiff's/Petitioner's Attorney/Address<br>JOSEPH AUGUST KRONAWITTER<br>SUITE 1100<br>2600 GRAND BLVD<br>KANSAS CITY, MO 64108-4626 |
| vs. | |
| Defendant/Respondent:<br>STIFEL, NICOLAUS & COMPANY, INC. | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 |
| Nature of Suit:<br>CC Other Tort | |
| | (Date File Stamp) |

### Summons in Civil Case

The State of Missouri to: **STIFEL, NICOLAUS & COMPANY, INC.**
Alias:

CT CORPORATION SYSTEM
120 S. CENTRAL AVE.
CLAYTON, MO 63105

*COURT SEAL OF*

*ST. LOUIS COUNTY*

      You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.
      **SPECIAL NEEDS:** If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.

<u>18-NOV-2022</u>
Date

                          Clerk

Further Information:
AD

---

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with

_____ a person at least 18 years of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

<u>Win Reed by email by agreement</u>(name). <u>counsel</u> (title).

☐ other _____

Served at <u>wreed@lewisrice.com</u> (address)

in <u>St. Louis</u> (County/City of St. Louis), MO, on <u>Dec 19 2022</u> (date) at <u>4:23 pm</u> (time).

<u>Katherine E Stuart</u>                    _____
Printed Name of Sheriff or Server               Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on <u>December 20, 2022</u> (date).

My commission expires: <u>March 2, 2025</u>      _____
            Date                    Notary Public

(Seal)
SHERRI L STUBBERS
Notary Public - Notary Seal
STATE OF MISSOURI
Comm. Number 17780307
Jackson County
My Commission Expires: Mar. 2, 2025